LESLIE BARNES MARKS
3099 Suter Street
Oakland, CA 94602
Tel: 510/434-9758
Email: blaqrubi@yahoo.com

Plaintiff IN PRO SE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LESLIE BARNES MARKS, In Pro Per,<br><br>  Plaintiff,<br><br>  v.<br><br>OCWEN FINANCIAL CORPORATION, OCWEN LOAN SERVICING, DB STRUCTURED PRODUCTS, INC. and DOES, 1-100,<br><br>  Defendants. | ) **CASE NO. C 07-2133 SI**<br>)<br>) **RELATED CASES:**<br>) **UNITED STATES DISTRICT COURT**<br>) **CASE NO: 06-06806 SI**<br>)<br>) **UNITED STATES BANKRUPTCY**<br>) **COURT DISTRICT OF DELAWARE**<br>) **CHAPTER 11 CASE NOS: . 07-104-16**<br>) **KJC, 07-10419 KJC and 07-10421 KJC**<br>)<br>) **PLAINTIFF'S REPLY TO**<br>) **DEFENDANT'S OPPOSITION FOR**<br>) **LEAVE TO FILE THIRD AMENDED**<br>) **COMPLAINT**<br>)<br>) Original Complaint filed<br>) In State Court: July 28, 2006 |

   Plaintiff, LESLIE MARKS, hereby submits her Reply to Defendant's Opposition to Plaintiff's Motion for Leave to File Third Amended Complaint as follows:

   I.   INTRODUCTION

   Defendants' Opposition outlines the history of this case to which this Court is very familiar. Defendants attempt to make Plaintiff suffer for the acts of her former counsel, who Plaintiff terminated because of her failure to adequately represent her. As Defendants allege in their Opposition at p. 4 12:15, referring to several missed law and motion, case management

-1-
PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION
OR LEAVE TO FILE THIRD AMENDED COMPLAINT

conferences, etc., Defendants are well aware during this period to which they refer, Plaintiff was represented by her former counsel, Linnea Willis. Defendants and their counsel, Attorney Allison is well aware Plaintiff was NOT required to appear once Plaintiff became represented by counsel. Defendants, their counsel and this Court are also well aware that when it was necessary for Plaintiff to appear Plaintiff ALWAYS appeared timely whether represented by herself or counsel. Defendant's statements go to the very nature of their bad faith acts alleged by Plaintiff.

Defendants' Opposition fails to note that every continuance requested by Plaintiff's former counsel, Linnea Willis, Defendant's counsel, stipulated or otherwise agreed to such continuance on the behalf of Defendants. See Docket in this case: Documents #61, #70, and #81. Defendants' Opposition fails to address the fact that they agreed to answer the Second Amended Complaint, (see, Docket Document #78), and Defendants did not move to dismiss the SAC. Defendants now claim the SAC was inadequate and wish to dismiss the SAC in its entirety. When Defendants agreed to answer and did answer the SAC they were well aware of the time it was filed and the date they responded to it. Defendant's complaints in this regard are made in bad faith and goes to the very nature of their bad faith acts alleged by Plaintiff.

Defendants' Opposition fails to note that the instant motion was TIMELY SERVED upon them on the 13th of February, 2009. Defendant's counsel TIMELY received a courtesy copy via email and a timely served copy by fax on February 13, 2009 before 5 pm. The motion was FILED with this Court on the next available date as the ECF system was down for maintenance. Defendants were not prejudiced in any way as service of this motion was timely. Defendants attempt to make a false representation to this Court goes to the very nature of their bad faith acts alleged by Plaintiff.

Plaintiff added new claims as new law has been introduced in subprime litigation that was not available to Plaintiff in 2006. New law that is available, in effect and applicable to Plaintiff now in 2009. Defendants' Opposition bring the same arguments, failing to recognize new law and in a bold attempt to prejudice Plaintiff in this action. Defendants further fail to acknowledge that the "loan documents" which were the basis for some orders referenced, were

NOT based on the "Hud-1" Settlement Statement/Disclosure Statement.  There are NO "loan documents" on file in this matter for this Court to review.   Plaintiff seeks that these issues be revisited with her Third Amended Complaint in the interest of justice.  Defendant's referencing orders relating to "loan documents" that they know to be false (as there are NO Loan Documents specifically a Hud-1 on file in this matter) as they allege in their Opposition goes to the very nature of their bad faith acts alleged by Plaintiff.

  Plaintiff challenges Defendants to prove that they are currently paying taxes and insurance on her property.  Defendants ceased making payments of any kind on Plaintiff's property on or about December 2007.  Plaintiff challenges Defendants to offer proof of any insurance or tax payments that they have made that is currently in effect on her property to date.  Defendants will fail to affirm these false claims.  Defendants should have been aware that these statements were FALSE when they made them in their Opposition.  Plaintiff further alleges and contends that any payments may have Defendants made in the past, are their liability, their loss.  These payments were made in their fraudulent attempt to prove they have some legal, lawful and/or valid claim to any portion of Plaintiff's property, which is the subject of this litigation.  Defendant's statements of making payments that they know to be false as they allege in their Opposition goes to the very nature of their bad faith acts alleged by Plaintiff.

  Defendants' Opposition mentions foreclosure proceedings, (see Opposition at p. 5 17:19) Defendants have not initiated any foreclosure proceedings in this action.  As in the related case in this Court, it has not been established who in fact the lawful holder of Plaintiff's mortgage note.  It has not been established the alleged transfer was a lawful and valid transfer.  It has not yet been established any Defendant is currently servicing Plaintiff's loan.  Defendants complain that they have not received mortgage payments, however, NO Defendant has provided Plaintiff with a mortgage invoice, routinely and timely from 2006 to the present date, and Plaintiff challenges them to provide evidence to the contrary.  Therefore, it is not clear if either Defendant is the "loan servicer" simply by their stating to be one.  Furthermore, Defendant's claim that Plaintiff owes them an astronomical amount of monies without providing any evidence or proof

of providing her with an invoice, mortgage note or invoice.  Defendants will not be in position to avail themselves of the foreclosure procedure prior to establishing their lawful and good faith right to hold and/or service Plaintiff's mortgage.  Defendant's statements of "foreclosure procedures being on hold" a statement that they know to be false as they allege in their Opposition goes to the very nature of their bad faith acts alleged by Plaintiff.  Additionally, under the new laws, they have to follow new rules and specific procedures prior to initiating foreclosure procedures.  Furthermore, Plaintiff's property was in active litigation at the time of Defendant's unlawful acquisition of her loan and NOT in foreclosure at that time.  As such, there could be no "foreclosure" on hold at this time.  This statement by Defendants is completely false.  Defendant's statements of "holding foreclosure procedures' that they know to be false as they allege in their Opposition goes to the very nature of their bad faith acts alleged by Plaintiff.

      Defendants' Opposition at page 5, 12:14 alleges that Plaintiff delayed this proceeding to seek counsel.  This statement is NOT true.  Plaintiff's former counsel requested numerous continuances to which Defendants, through their counsel of record agreed.  Plaintiff while representing herself, never once sought an extension or stipulation for a continuance in this matter.  Plaintiff resents Defendant's false and bad faith statements in its Opposition at p.5 13:17.  In addition to being untrue, the statements are unclear.  Defendants refer to Plaintiff's former counsel, the very same counsel of whom they complain.  The fact remains that Defendants have not "serviced" her mortgage nor provided her with invoices, statements, payment slips, nothing.  Plaintiff challenges Defendants to provide proof to this Court that in their regular course of business of "loan servicing" their customers must "guess" what to pay month to month an do so simply without invoicing.  Or would Defendants have this Court believe that Defendants have clients who pay them simply because Defendants make a baseless claim that they are "owed" monies?   Defendant's statements regarding making payments and references to Plaintiff's diligence in this matter that they know to be false as they allege in their Opposition goes to the very nature of their bad faith acts alleged by Plaintiff.

      Finally, Defendants claim astronomical sums are due them.  Upon receipt of Plaintiff's

-4-
PLANTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION
OR LEAVE TO FILE THIRD AMENDED COMPLAINT

complaint, at NO TIME did Defendants make any good faith effort to make a loan work out, loan modification, or even evaluate Plaintiff's ability to pay the amounts they claim - a loan which was in active litigation, legal dispute and in default at the time Defendants unlawfully, wrongfully and in clear bad faith acquired the loan. Plaintiff has received NO invoice of any kind since 2006 from any Defendant. No Defendant is currently servicing Plaintiff's mortgage. Defendants further fail to justify any sums they claim they are due in good faith, with physical, lawful and/or reasonable evidence. Furthermore, failure to "service" the loan brings to question the status of Defendants as an assignee, transferee or valid party with interest of any kind in Plaintiff's mortgage. Defendants' failure to pay the insurance and taxes due on Plaintiff's mortgage brings to question the status of Defendants as an assignee, transferee, mortgage holder or loan servicer and questions whether or not Defendants have a valid lawful interest in Plaintiff's property. Defendants' Opposition at p.8 1:11 confirm that Defendants are fully aware what a "loan document" is and that there is no such document on file in this case. Furthermore, the case cited by Defendants is not on point. *Barber v. Fairbanks Capital Corp.*, 266 B.R. 309, 321 (Bktcy. E.D.Cal.2001) states as follows:

> **OVERVIEW:** Debtor's first loan was arranged by a home improvement contractor through a broker. The broker later arranged a loan with creditor's predecessor, when the first loan was not enough for the improvements and to repair faulty work. The court held that to fall within the direct loan exception of Pa. Stat. Ann. tit. 73, § 500-102(10), the debtor had to obtain the loan directly from the lender. While there were no allegations the contractor was involved in arranging the second loan, the contractor dragged the debtor to the entity who ultimately arranged both loans. Lender's loan was subject to HIFA. The fees for that loan exceeded 8 percent of the amount financed; it was subject to HOEPA. 15 U.S.C.S. § 1641(d) subjected the creditor, as assignee of the second loan, to causes of action the debtor could assert against its predecessor, including unfair trade practices claims. General assignee liability provision of HOEPA did not trump ECOA's specific assignee liability limitation.
>
> **OUTCOME:** The creditor's motion to dismiss was denied with respect to the Pennsylvania Home Improvement Finance Act and usury claim, and the Pennsylvania Unfair Trade Practices and Consumer Protection Law claim. The motion was granted with respect to the Equal Credit Opportunity Act and the common law fraud claims.

There is no mention of Home 123, there is no "home improvement" loan in this matter at bar.

The other cases cited are equally off point.  Clearly, Defendants fail to "service" Plaintiffs mortgage loan because as outlined above, it may be determined that Plaintiff can prove yet other allegations if the interest rate on Defendants claimed 600K is more than 8 percent of the amount financed.  Defendant's statements regarding their failure to receive payments that they know they have not invoiced or "serviced" her mortgage loan and know to be false as they allege in their Opposition goes to the very nature of their bad faith acts alleged by Plaintiff.  Several of Defendant's numerous citations have already been deemed to be inapplicable here, and several are simply irrelevant, the majority of cases cited are off point.  In the interest of saving time, time which Defendants claim to be deprived of, Plaintiff will not refer to each case here.  Plaintiff acknowledges that several points in opposition by Defendants are simply off point, irrelevant here or false.

## II. DEFENDANTS WILL NOT BE PREJUDICED BY THIS COURT GRANTING PLAINTIFF'S MOTION TO FILE HER THIRD AMENDED COMPLAINT.

As Plaintiff alleges and continues to allege, Defendants are NOT entitled to hold mortgage to her property.  While Defendants claim they are "loan servicers" or "assignees" the fact still remains Plaintiff has receive NO mortgage invoice from either Defendant from 2006 to present.  Defendants pull figures out of thin air and with no justification, validation, accounting, documentation, "original loan documents" or proof of any kind that what they claim is so, lawful or even a valid claim.  Nor has it been established that they are entitled to any sums from Plaintiff, whatsoever.  As Defendants claim, like Plaintiff, they have been defrauded by New Century and should seek recovery for their ailments there as well, not from Plaintiff.

If Plaintiff realleges issues that have been previously ruled upon, it is not with maliciousness or in bad faith.  New laws apply to subprime mortgage loans, which includes the mortgage loan which is the subject of this litigation. New laws apply to the handling of subprime mortgage loans, which includes the mortgage loan which is the subject of this litigation. Plaintiff alleges and continues to allege that as Defendants claim to have acquired her mortgage, not by order of the Trustee in the Bankruptcy court, but voluntarily, in cahoots with their subprime counterpart New Century, to affect an illegal transfer outside the legal process and in clear and

bold bad faith in violation of law. If it is in fact true that New Century did not disclose that this matter was in active litigation, then their relief is with the party who defrauded them, not Plaintiff. If it is in fact true that Defendants had NO IDEA that New Century would file bankruptcy in light of the very public Federal and SEC investigations, then the err is that of Defendants, not Plaintiff. Plaintiff should not be responsible to pay for their ignorance, bad faith unlawful transactions and/or willful negligence.

Had any Defendant had any good faith intention in this matter, or truly believed that they are entitled to the sums they claim in this matter they would not have agreed and stipulated to numerous extensions of time, and excuses made by Plaintiff's former counsel, and then complain about their decisions. Defendants now whine because they agreed to the numerous extensions. Plaintiff was not aware, nor involved in the decision making process of said stipulation, nor had Plaintiff any knowledge of the numerous failed appearances by Plaintiff's former counsel. Plaintiff certainly refuses to be held liable for the actions of her former counsel. Plaintiff was not consulted, advised nor aware of these acts until Attorney Allison complained of them in his pleadings. When Plaintiff's former counsel appeared to the settlement conference 45 minutes late, among the discovery of other bad acts, Plaintiff had no choice but to terminate her services. The termination was in good faith in Plaintiff's best interests and not an attempt to delay or hinder this matter. To the contrary, Plaintiff seeks immediate and swift justice in this matter. Plaintiff furthermore, while not a member of the bar, did not consistently miss appearances, nor ignore the orders of this Court, as Defendants attempt to infer in their lengthy Opposition. Defendant's baseless allegations which they know to be false as they allege in their Opposition go to the very nature of their bad faith acts alleged by Plaintiff.

Defendants Opposition is also riddled with untruths. This case has not been mediated twice. (See, Defendant's Opposition at p.4, 17:18.) There was ONE settlement conference. The CONTINUED settlement conference was telephonic, due to the failure of Plaintiff's former counsel to appear in Court on time. As Defendant's counsel Allison is well aware, we BOTH sat in the empty courtroom awaiting the arrival of Plaintiff's former counsel for over 45 minutes at

the initial Settlement Conference. That act in itself negatively impacted Plaintiff's position, by clearing irritating the Court. Attorney Allison did not bother to appear telephonically to the continued telephonic Settlement Conference, nor did any representative of Defendant who was present at the initial settlement conference. Instead, a third party claiming to be "on his honeymoon" appeared telephonically, completely unprepared (and oblivious to the content of the initial Settlement Conference) to settle this case in good faith, acts of clear and intentional bad faith. Plaintiff's Former Counsel was terminated prior to the continued telephonic appearance. Defendant's statements regarding Plaintiff's disregard and inferring Plaintiff lack of diligence that they know to be false as they allege in their Opposition goes to the very nature of their bad faith acts alleged by Plaintiff.

Defendants' Opposition at p. 5 16:17 claims that Plaintiff has not made a mortgage loan payment since 2006. It has not been established that any Defendant is entitled to receive payment of any kind from Plaintiff. Defendants have NOT serviced her mortgage, have not provided Plaintiff with invoicing of any kind and yet claim there are arrearages in the sum of 115k. Plaintiff has no knowledge of how these figures were derived, if they are accurate, they are certainly not in good faith. Plaintiff has no idea what interest rate is being charged. And it is not established that ANY Defendant is in fact the lender, legal holder of Plaintiff's mortgage. Plaintiff's seeks justice. Plaintiff suffers from not having the right to encumber her property and live comfortably under the threat of the numerous litigations in this matter. Plaintiff and her family SUFFER at the hands of these subprime lenders attempting to steal her primary residence with little or no evidence justifying they are in fact legally entitled to hold her property, in GOOD FAITH. Plaintiff contends and continues to contend Defendants are not entitled to relief of any kind from her and she owes them NOTHING. Again, Defendants should seek relief from New Century, not Plaintiff.

III. OCWEN IS LIABLE UNDER TILA AS A MATTER OF LAW

Ocwen claims to be the "loan servicer," again neither Defendant is "servicing" Plaintiff's loan. Neither Defendant is completing the "acts" of a "loan servicer" under TILA. As such,

until it is established exactly that either Defendant is acting as a "loan servicer' then Ocwen is liable under TILA as a matter of law.  Plaintiff can claim to be a cab driver.  However, is she never drives a cab, receives a fare or does the actions that define a "cab driver" Plaintiff's claim to be a cab driver would be in err, a farce.  Ocwen's claim to be a "loan servicer" here is in gross error, a farce.  Ocwen IS liable under TILA as a matter of law.

### IV. DB IS LIABLE UNDER TILA AS A MATTER OF LAW

It has not been established that DB is a lawful "assignee," "transferee" broker, mortgage holder or what exactly their status is here.  First DB claimed to be an "assignee" then it claims not to be an "assignee", whichever claim suits the off point claim Defendant is currently attempting to justify.  Again, Plaintiff's seeks this Court to revisit the issue that a violation is apparent on the face of the "disclosure statement."  There is no certified copy, or other copy of a "disclosure statement" on file with this Court in this matter.  The "disclosure statement" commonly referred throughout the mortgage industry as a HUD-1 is NOT on file in this Court by either Plaintiff or Defendants.  As such, Plaintiff alleges, and continues to allege that until such document is presented to this Court for review so we can see what exactly is on "its face", DB is liable under TILA as a matter of law.  Some orders were based on documents on file, but those documents are not "loan documents" as defined by TILA, RESPA and the mortgage industry in general.  As such, Defendant's statements regarding "loan documents" that they know to be false as they allege in their Opposition goes to the very nature of their bad faith acts alleged by Plaintiff.

Until it is determined exactly how Defendants "acquired" Plaintiff's loan and if that acquisition was in good faith and a lawful acquisition, DB is liable under TILA as a matter of law.

### V. PLAINTIFF ALLEGES RESPA VIOLATIONS AS TO BOTH DEFENDANTS.

Plaintiff alleges that Defendants, and BOTH of them, failed to give her RESPA required notices.  While Defendants attempt to use intricate plays on words such as "assignee" and "loan servicer", Plaintiff alleges and continues to allege that if the initial transfer from New Century

was defective subsequent transfers were also defective. If A steals a car, sells it to B, when B discovers the car was stolen and MUST return the car to its rightful owner, B cannot recover its monies expended from the owner of the stolen vehicle. B (Defendants) have to seek recovery from A (New Century) not the original owner of the car (Plaintiff).

### VI. DEFENDANTS ARE NOT LIABLE FOR NEW CENTURY'S NOTICE OF ASSIGNMENT OF SERVICING RIGHTS

Plaintiff never said that Defendants were liable for New Century's failure to Notice of Assignment of Servicing Rights. Plaintiff alleges that Defendants acknowledged the unlawful blunder, ignored it and sought to become unjustly enriched as a result of that blunder. Defendants attempt to create a legal transfer while well aware the initial transfer was in error, illegal, defective and in bad faith. Defendants seek unjust enrichment from an act they know to be unlawful and in violation of several laws. Again, B cannot seek recovery from the original owner (Plaintiff); they must seek fair and good faith recovery from A (New Century) as Defendant's claim Plaintiff must do. They too, should seek relief elsewhere for relief from their bad faith, subprime, unjust and unfair poor business transaction in their acquisition of a mortgage loan that was in active litigation and default at the time of their unlawful acquisition. Defendant's claim that "they did not know" or are not "responsible" for any acts of New Century does NOT entitle them to become unjustly enriched and benefit as a result of Defendants own ignorance at Plaintiff's expense and detriment.

### VII. OCWEN'S NOTICE IS MOOT AS THE INITIAL TRANSFER WAS IN BAD FAITH, IN VIOLATION OF RESPA

As clearly outlined in VI above, as the initial transfer violates RESPA subsequent transfers, based on the invalidity of the intial transfer, subsequent transfers should be deemed moot. Defendants attempt to justify their bad faith acts are in bold and direct violation of RESPA, TILA and other laws as alleged by Plaintiff in good faith.

### VIII. CLAIM FOR KICKBACK IS VALID AS TO BOTH DEFENDANTS

Defendants' Opposition at p. 13, 8:28 and p.14, 1:17 states first that Plaintiff alleges that "...broker's fees were paid by Home 123 to Plaintiff's broker at loan origination." Plaintiff

challenges Defendants to show where Plaintiff has made such an allegation. It was never established in the related action against New Century in this Court exactly who held Plaintiff's Mortgage, Home 123 or New Century, so Plaintiff would not make such an allegation. Plaintiff makes no mention of "YSP" in her complaint. While initially Defendants claim not to have received a "kickback" Defendants then justify the receipt of a kickback. So it is unclear whether or not they actually received a "kickback" and who paid it to them. Defendants supporting cases see Opposition at p. 14 17; 28 relate to premiums paid to brokers and are off point. Neither Defendant has clarified, validated or justified their position as mortgage holder or loan servicer nor does Plaintiff now have any clue if they are now claiming to be "brokers" or attempting to qualify or justify receipt of fees as if they were brokers. As the HUD-1 DISCLOSURE STATEMENT, which is also referred to as a "SETTLEMENT STATEMENT, is NOT on file as an exhibit in this matter or anywhere in the documents relating to this matter, it cannot be clear what is on its face – the Face of the Hud-1 Disclosure Statement. Only when a CERTIFIED copy taken from the ORIGINAL LOAN DOCUMENTS is produced for this Court to review and analyze, can it be determined if a kickback received was lawful and did not violate RESPA. The ORIGINAL Hud-1 statement must be presented in order for this Court to fairly evaluate what exactly is on its face. Defendants are in the subprime mortgage loan business and know this to be true. As such, Defendants allegations that Plaintiff made claims of any kind regarding Home 123's transfer of monies goes to their bad faith acts as Plaintiff alleges and continues to allege throughout this litigation.

   IX.  DEFENDANTS ARE LIABLE FOR BREACH OF FIDUCIARY DUTY

   Defendants must decide what their position is in this litigation. Defendants are not brokers, but offer evidence that supports and justified their receipt of kickbacks. Defendants claim to be loan servicers but they do not, have not and continue to fail to service Plaintiff's loan – yet demand that payment has not been made. Since it is not clear what position each Defendant holds, and that their actions are within the legal guidelines for that position, each Defendant HAS a fiduciary duty to Plaintiff to act in good faith and to conduct business fairly

and lawfully.  Defendants have failed to do so and complain of not receiving payments to which they have not provided lawful, valid invoices and provided and defined by law.

### X. UNFAIR BUSINESS PRACTICES CLAIM IS VALID

Defendants fail to mention that this Court ruled in Plaintiff's favor on this issue. Defendants fail to service her loan, fail to advise her of the amount of the "claimed" monthly payment, interest rate, even the amount being financed.  Defendants simply claim, with no evidence whatsoever that there is an arrearage of 115k and they are owed $600k.  Are these amounts combined?  Are the amounts inclusive of each other? As such, these are clear unfair, unlawful, bad faith business practices which clearly violate several laws.   Plaintiff seeks injunctive relief and restitution as to Defendants violations of the UCL according to proof.  The claim in the Third Amended Complaint is valid and relief sought lawful.

### XI. UNLAWFUL ACTIVITY CLAIM IS VALID

If Defendants, and both of them expect to BENEFIT from the unlawful actions of another (New Century), then compound their bad faith actions by failing to "service" Plaintiff's loan, failing to justify the interest rate of the loan, loan amounts financed and other good faith acts, Defendants and both of them have clearly conducted unlawful, bad faith business activity and continue to attempt to be come unjustly enriched by their bad acts.  Plaintiff's claim for unlawful activity is valid.

### XII. PLAINTIFF'S NINTH CLAIM IS VALID

Again, Defendants have not proven that they are "assignees' or "loan servicers" or lawful holders of Plaintiff's mortgage in this instant action.   Until they prove that Defendant, and each of them, are who they say they are by their actions relating to Plaintiff's mortgage, the claim is valid.  Plaintiff's mortgage is not being serviced.  It is unclear whether Defendant's acquisition of Plaintiff's mortgage was a lawful transaction conducted in good faith.  As such Plaintiff's claim is valid.

### XIII. DEFENDANTS VIOLATED FCRA

Again, Defendants made derogatory reports PRIOR TO any payment being requested or

demanded, PRIOR TO verification of a valid transfer or transaction and PRIOR TO Defendants servicing her loan in any manner, a loan which they do not service to date. Defendants WRONGFULLY made false and inaccurate reports to the credit reporting agencies. Plaintiff's does not need a lesson in removing derogatory credit information. Defendants should REMOVE the information as it was unlawfully reported, is unfair, reported in bad faith and Defendant are not entitled to hold Plaintiff's mortgage and challenges them to prove otherwise. As such the claim is valid, lawful and made in good faith.

### XIV. NEGLIGENT MISREPRESENTATION CLAIMS ARE VALID

Plaintiff is clear: Defendants claim to be loan servicers, yet they are NOT servicing her loan. Defendants have made derogatory credit reporting prior to valid transfer of the loan, within 60 days of their questionable acquisition of her loan, in violation of law. Defendant's acquisition of Plaintiff's loan is unclear, but clearly unlawful. Plaintiff believes Defendants unlawful claims of ownership and servicing of her mortgage is a blatant misrepresentation of an existing material fact – they are subprime lenders seeking unjust enrichment in subprime fashion. Defendants have no reason to believe they would receive payment in good faith on a loan to which they provide no invoicing, do not advise the interest rate, does not clarify or justify the amount financed, but claim to be owed in excess of 600k, for a home that is worth roughly 149k or less. Defendants have no reason to believe they should receive payments for which they do not provide an invoice, or statement, or payment demand, nothing. Defendants have no reason to believe they would receive payment on a loan that was in active litigation and default at the time of their unlawful acquisition of said loan. Defendants misrepresent their position and acquisition of the loan, whether the loan was "transferred" or they were "assigned" the loan, who "assigned" the loan and if this assignment was legal, valid and in good faith. Plaintiff's claims are valid.

### XV. CONCLUSION

For the reasons above, and in the interest of justice, Plaintiff respectfully requests that this Court GRANT her motion for Leave to file the Third Amended Complaint. Plaintiff will suffer manifest injustice if, the Plaintiff's motion is denied.

Defendants seek to become unjustly enriched by failing to establish that Defendants are who they claim to be – loan servicers and mortgage holders, who act in good faith and within the perimeters of the law.

Defendants fail to justify their roles here, how Defendants acquired the property, how Defendant's determined the amounts they claim to be due.  There are NO "loan documents" or "HUD-1" or "loan documents' of any kind on file in this matter, therefore there can be no determination of "what is on the face of the loan documents."   Prior ruling based on "loan documents on file" should be reviewed for relevance and application in the instant case.

Defendants claim Plaintiff is stalling for time, yet Defendants request an additional 30 days should Plaintiff's motion be granted.  Defendants stipulated to numerous extensions of time with Plaintiff's former counsel, without Plaintiff's knowledge or approval. It is Defendants actions that are in bad faith.  Delays in this litigation are the result of Defendants numerous stipulations with Plaintiff's former counsel.  Defendants have made several misrepresentations and false statements.  Defendants seek to prolong this litigation in hopes of finding some way to justify their unlawful actions.  Defendants simply seek recovery from the wrong party.

Defendants wish to rely on claims ruled based on prior complaints, complaints that will become moot should Plaintiff's motion be granted.  Plaintiff respectfully requests that this matter be addressed with a fresh pair of eyes.  Eyes that are not clouded by the shenanigans of Defendants.  Eyes that can not be fooled by twisted terminology, misrepresentations, subprime tactics and willful misstatements of Defendants.  Plaintiff only asks for and seeks that which is fair and just.  Plaintiff's Motion for Leave to file the Third Amended Complaint should be granted.

Dated:  March 6, 2009                              Respectfully submitted,


                                         ___//s/_____
                                         Leslie Barnes Marks, In Pro Se

# PROOF OF SERVICE

I, the undersigned, declare that I am employed in the County of Alameda, State of California. I am over the age of eighteen (18) years and not a party to the within cause. My address is P.O. Box 1999, Union City, CA 94589.

On March 6, 2009, I served the following documents:

1. REPLY TO OPPOSITION TO MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT; and

2. OPPOSITION TO COUNTER MOTIN FOR JUDMENT ON THE PLEADINGS TO DISMISS CLAIMS ALLEGED IN THE SECOND AMENDED COMPLAINT AND PROPOSED THIRD AMENDED COMPLAINT

[ ] BY HAND DELIVERY by causing a true copy thereof enclosed in a sealed envelope, to be delivered by hand to the address (es) shown below.

[ ] BY OVERNIGHT DELIVERY by placing a true copy thereof, enclosed in a sealed envelope, with delivery charges fully paid, to be delivered overnight to the address(es) shown below.

[ X ] BY FACSIMILE TRANSMISSION by transmitting a true copy thereof by facsimile transmission from the facsimile number (866) 814-8313 to the interested parties to said action at the facsimile number(s) shown below.

Jeffrey S. Allison
Houser & Allison
9970 Research Drive
Irvine, California 92618
Tel: 949-679-9111
**Fax: 949-679-1112**

I declare under penalty of perjury that the foregoing is true and correct and executed on this 6h day of March, at Oakland, California.

Gina Lewis

-1-
PROOF OF SERVICE